# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL RAY STRINGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-13-1053-HE** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Michael Ray Stringer brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 11, hereinafter "R._"). The parties have briefed their positions, and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be AFFIRMED.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his application for SSI on November 2, 2009, alleging a disability onset date of September 22, 2009, and seeking benefits on the basis of: knee

and neck pain, poor vision, hearing loss, and depression.[1]  R. 138-41, 147, 151.

Following denial of his application initially and on reconsideration, Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ"), which was held on May 10, 2011.

R. 32-60, 74-76, 92-100.  At the hearing, Plaintiff's disability onset date was amended to

September 25, 2009.  R. 34-35.  In addition to Plaintiff, who was represented by counsel,

a vocational expert appeared and testified at the hearing.  R. 35-59.  The ALJ issued an

unfavorable decision on May 20, 2011.  R. 19-27.

The Commissioner uses a five-step sequential evaluation process to determine

entitlement to disability benefits.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009);

20 C.F.R. § 416.920.  At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity during the period from the date of protectively submitting his

SSI application through the date of the decision.  R. 21; *see* 20 C.F.R. § 416.971.  At step

two, the ALJ determined that Plaintiff had the following severe impairments:

gastrointestinal disorder, affective mood disorder, disorders of lumbar and cervical spine,

and knee pain.  R. 21; *see* 20 C.F.R. § 416.920(c).  At step three, the ALJ determined that

Plaintiff's condition did not meet or equal any of the presumptively disabling

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  R. 21-

22; *see* 20 C.F.R. § 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on

all of his impairments.  R. 22-26; *see* 20 C.F.R. § 416.920(a)(4)(iv).  The ALJ found:

---

[1] The record also contains a denial of a previous SSI application issued by the same ALJ
on September 24, 2009.  R. 61-72.  Although referenced by the ALJ in his decision on the
current application, *see* R. 19, 26, the previous disposition is not at issue in this appeal.

> [T]he claimant has the [RFC] to perform "light" work . . . (lift and/or carry
> up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk
> up to six hours in an eight-hour workday; and sit up to six hours in an eight-
> hour workday) except he can only occasionally stoop, crouch, crawl, kneel
> and balance. He can only occasionally climb stairs and never climb
> ladders. Due to psychologically based factors, there are some limitations[,]
> and claimant is limited to performing simple tasks and some more complex
> tasks with routine supervision.

R. 22-23; *see* 20 C.F.R. § 416.967(b) (defining light work). The ALJ determined at step four that Plaintiff was unable to perform his past relevant work of truck driver as the demands of that work exceeded Plaintiff's RFC. R. 26; *see* 20 C.F.R. § 416.965.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 26-27. Taking into consideration the VE's testimony regarding the degree of erosion to Plaintiff's unskilled, light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform work such as the light, unskilled occupation of bench assembler, and that such other work offers jobs that exist in significant numbers in the national economy. R. 27; *see* 20 C.F.R. § 416.945(a)(5)(ii). On that basis, the ALJ held that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from November 2, 2009, through the date of the decision. R. 27; *see* 20 C.F.R. § 416.920(g).

Plaintiff's request for review of this decision by the Appeals Council was denied on September 13, 2013. R. 1-6. Thus, the May 20, 2011, determination of the ALJ is the Commissioner's final decision on Plaintiff's SSI application. *See* 20 C.F.R. § 416.1481. Thereafter, Plaintiff commenced this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff raises two claims of error on appeal. First, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. Second, Plaintiff

contends that the ALJ failed to properly assess Plaintiff's credibility.  Pl.'s Br. (Doc. No. 13) at 17-28; Pl.'s Reply Br. (Doc. No. 15) at 1-4.[2]

## I.    Whether the ALJ's RFC Assessment Is Supported by Substantial Evidence

Pointing to several allegedly contradictory items of medical evidence in the record, Plaintiff asserts that the ALJ formed his own medical opinions and otherwise erred in finding that Plaintiff retained the RFC to perform the prescribed range of light work outlined above.  Plaintiff's argument is at its core a contention that the ALJ's factual findings are not supported by substantial evidence in the record; thus, the undersigned reviews this substantiality claim under the standard outlined above.  *See Branum*, 385 F.3d at 1270; *Wall*, 561 F.3d at 1052.  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted)).

### A.  Mental Status Examination of Beth Jeffries, Ph.D.

Plaintiff first argues that the ALJ's RFC is contrary to the opinion of consulting psychologist Beth Jeffries, Ph.D.  Pl.'s Br. at 17-19.  On January 13, 2010, Dr. Jeffries met with Plaintiff and issued a detailed written Mental Status Examination.  R. 240-44.  The ALJ discussed this Mental Status Examination at length in his decision.  R. 23-24 (citing Mental Status Examination (R. 240-44)).  Plaintiff objects to the underlined sentence in the portion of the ALJ's RFC findings excerpted below:

---

[2] References to filings use the ECF pagination.

> The consultative psychologist noted that it is likely that claimant's symptoms of depression do interfere with his ability to perform occupationally. However, she also noted that treatment and medication would be beneficial; claimant failed to appear for an assessment for mental health treatment. He currently receives prescriptions for Xanax, which appears to help with his symptoms. <u>If claimant were to comply with recommendation of regular treatment and medication his symptoms would cause little to no limitation in his ability to perform occupationally.</u> Moreover, the undersigned has accounted for claimant's depression by allowing some limitations, in that claimant is limited to performing simple tasks and some more complex tasks with routine supervision.

R. 25 (citing Mental Status Examination (R. 240-44)).

As was specifically noted by the ALJ in the decision, Dr. Jeffries opined: "At this time it is very likely that his symptoms of depression do interfere with his ability to perform occupationally[.]" R. 243; *see* R. 24. Plaintiff argues that, in view of this statement by Dr. Jeffries, the ALJ's "conjecture" as to the remedial effects of medication and treatment on Plaintiff's depression amounts to an improper substitution of the ALJ's own opinion for that of Dr. Jeffries and is not supported by the record. Pl.'s Br. at 17-19.

Plaintiff overstates the difference, if any, between the functional limitations observed by Dr. Jeffries and those reflected in the ALJ's RFC. Dr. Jeffries' opinion was qualified both with respect to the functional limitations observed and the effect treatment could have on those limitations. Regarding mental health symptoms, Dr. Jeffries observed no significant limitations in Plaintiff's appearance and behavior, activities of daily living, thought processes, sensory and cognitive abilities, concentration and memory, or judgment and insight. R. 241-42. Dr. Jeffries noted Plaintiff's reports of past but not current suicidal ideation and, following the death of Plaintiff's brother, auditory hallucination and depressed mood. R. 421-42. Dr. Jeffries did not opine as to

any specific limitations other to say that Plaintiff's symptoms of depression "interfere with his ability to perform occupationally" and "interfere" with his social interaction including by causing Plaintiff to "avoid activities where he has to go out and be active." R. 243. Regarding the potential benefit of treatment, Dr. Jeffries—in the referenced *January 2010* Mental Status Examination—qualified the noted limitation on occupational performance by describing it as "very likely" and occurring "[a]t this time," and qualified the noted limitation on social interaction by describing it as "likely." R. 243. Dr. Jeffries recommended that Plaintiff seek counseling and specifically emphasized that "perhaps medication could be a benefit to him as well as behavioral therapy." R. 243.

At the administrative hearing in *May 2011*, Plaintiff testified that the combination of counseling and medication he had received "truly, truly helped" him deal with his sickness and that "the Xanax helps . . . to take care of" his depression and anxiety. R. 45-46, 48. Other evidence in the administrative record also indicates that Plaintiff's prescription for Xanax appeared to be helping with Plaintiff's symptoms of depression. R. 25; *see, e.g.*, R. 241-43 (Plaintiff taking Xanax and has "steady, euthymic" mood, no current suicidal ideation, and no problems completing activities of daily living), 308-10 (Plaintiff taking Xanax and has normal thought processes and no mood swings), 352-59 (multiple refills of Xanax prescription at Plaintiff's request). In his RFC, the ALJ made provision for Plaintiff's mental health symptoms by limiting Plaintiff "to performing simple tasks and some more complex tasks with routine supervision." R. 22-23, 25.

The ALJ's findings as to Plaintiff's RFC—including as to the specific limitations he imposed in light of Plaintiff's depression-related symptoms—were not the product of

the ALJ's own medical judgment, but reasonable and appropriate inferences drawn from Plaintiff's testimony, the qualified conclusions of Dr. Jeffries in her January 2010 Mental Status Examination of Plaintiff, and the remainder of the medical evidence. In other words, there was substantial evidence to support the RFC as determined by the ALJ. *See Foy v. Barnhart*, 139 F. App'x 39, 43-44 (10th Cir. 2005) (upholding RFC determination where ALJ limited claimant to routine, simple work tasks based upon claimant's mental limitations arising from anxiety and depression); *cf. Sullivan v. Colvin*, 519 F. App'x 985, 988-89 (10th Cir. 2013) (holding that ALJ's RFC determination limiting claimant to unskilled, supervised work with no regular public contact adequately addressed a medical opinion that claimant was unable to tolerate stress). The ALJ's RFC determination is not subject to reversal on this basis.

### B. *Physical Medical Source Statement of Sallee LaFave, PA*

Plaintiff next objects that the ALJ's RFC determination is not supported by substantial evidence in light of a Physical Medical Source Statement (PMSS) completed by physician assistant ("PA") Sallee LaFave on August 23, 2013. Pl.'s Br. at 19-23; R. 363-67. After the ALJ's unfavorable decision of May 20, 2011, Plaintiff submitted the PMSS as well as additional evidence and an accompanying brief to the Appeals Council for its consideration. *See* R. 1-2, 4, 220-22, 363-70. The Appeals Council ordered that the new evidence and brief be accepted as part of the record. R. 5. Stating that it had considered the new evidence and brief from Plaintiff's attorney, and determining that these materials did not provide a basis for changing the ALJ's decision, the Appeals Council denied review. R. 1-5.

When the Appeals Council denies review but expressly accepts new evidence into the record, it is not required to discuss its analysis of that evidence. *See Martinez v. Astrue*, 389 F. App'x 866, 868-69 (10th Cir. 2010). This is true even of opinion evidence that an ALJ would have been required to expressly consider, such as a treating physician or psychologist opinion. *See Robinson v. Astrue*, 397 F. App'x 430, 432 (10th Cir. 2010). On appeal, however, the reviewing court still must decide whether the disability determination is supported by substantial evidence in the record as a whole, specifically including the new evidence that the Appeals Council made part of the record. *Martinez*, 389 F. App'x at 869; *Foy*, 139 F. App'x at 42. *See generally Krauser v. Astrue*, 638 F.3d 1324, 1328-29 (10th Cir. 2011); 20 C.F.R. § 416.1470(b) ("In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."). As a consequence of these principles, the reviewing court may be called upon to analyze an ALJ's opinion on the basis of evidence not considered or discussed by the ALJ.

The resulting question for the reviewing court is "whether the qualifying new evidence upsets [the ALJ's disability determination]." *Martinez*, 389 F. App'x at 869. The undersigned has previously explained that if the evidence in the record relevant to that question is so one-sided as to permit a ready answer by a reviewing court, the court may proceed to conclusively determine whether benefits should or should not have been awarded. *See Hickey v. Colvin*, No. 12-1277-C, Report and Recommendation at 8-12 (W.D. Okla. Feb. 25, 2014) (analyzing cases), *adopted*, Order (W.D. Okla. Mar. 18,

2014). On the other hand, if that question turns on competing evidence that is more properly evaluated in the first instance by the finder of fact, the court may remand for further proceedings by the Commissioner. *Id.* Here, because the new evidence presented by Plaintiff may readily be found to not upset the ALJ's disability determination, remand for additional findings is not required.

Plaintiff argues that Ms. LaFave's PMSS is incompatible with the ALJ's determination that Plaintiff retained the RFC to perform light work, subject to additional restrictions and limitations. Pl.'s Br. at 19; R. 22-23. According to Plaintiff, the restrictions reflected in the PMSS would preclude him from performing even a sedentary level job. Pl.'s Br. at 19. In the PMSS, a fill-in-the-blank document, Ms. LaFave indicates that Plaintiff has been seeking her care monthly for the past four years. R. 364. Ms. LaFave diagnoses lumbago; anxiety; depression; chronic right knee, back, and sciatic pain; and arthritis. R. 364. Ms. LaFave opines that Plaintiff's pain "is controlled to a 3 out of ten with medication" but that Plaintiff's medications cause him to do things at a slower pace, which "'stresses him out.'" R. 364, 367. Ms. LaFave opined that Plaintiff could sit about 2 hours and stand/walk less than 2 hours in an 8-hour workday and must take unscheduled breaks every 2 hours for 15 minutes. R. 365. Ms. LaFave further found that Plaintiff could never lift more than 10 pounds and would be "off task" 25% or more of the time. R. 366-67. The PMSS also reflected additional limitations in Plaintiff's ability to walk, sit, stand, reach, handle, finger, attend work, and tolerate work stress. R. 364-67.

Again, the fact that the Appeals Council did not make express findings regarding Ms. LaFave's PMSS is not cause for remand.  In such circumstances, "[w]e take the Appeals Council at its word 'when it declares that it has considered a matter,'" and "there is no error, even if the order denying review includes no further discussion." *Martinez*, 389 F. App'x at 868-69 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)); *accord Foy*, 139 F. App'x at 42.  Nor does the opinion itself, when evaluated in light of the entirety of the medical evidence of record, upset the ALJ's disability determination such as would prompt remand.

Plaintiff concedes that a PA such as Ms. LaFave is not an "acceptable" medical source and therefore cannot give a medical opinion.  *See* Pl.'s Br. at 19-20; 20 C.F.R. § 416.913(a), (d); SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  "Medical opinions are statements from . . . 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions."  SSR 06-3p, 2006 WL 2329939, at *2.  As a nonacceptable or an "other" medical source, Ms. LaFave's opinion may be relied upon "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.*  Opinions from other medical sources "are important" and "may reflect the source's judgment about some of the same issues addressed in medical opinions"; however, "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case."  *Id.* at *3, *5.

Here, Ms. LaFave's opinion is conclusory and insufficiently supported. For example, Ms. LaFave indicates monthly contact with Plaintiff for the past 4 years, but Ms. LaFave's name does not appear on any of the medical records from the relevant facility. *See* R. 342-48, 351-62. The PMSS does not describe the nature of Plaintiff's treatment by Ms. LaFave or reflect that Ms. LaFave's conclusions as to Plaintiff's functional limitations were based upon actual medical testing or objective observations, which reduces what weight—if any—should be assigned to the opinion.

> We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. . . . .
>
> . . . The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.

20 C.F.R. § 416.927(c)(2)-(3); *cf. Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) ("A treating physician's opinion may be rejected if his conclusions are not supported by specific findings."). The PMSS does not provide Ms. LaFave's area of practice specialization, if any, or her experience and credentials. *Cf.* 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Ms. LaFave answered in the affirmative when asked whether Plaintiff's impairments "as demonstrated by signs, clinical findings or test results" were reasonably consistent with the symptoms and functional limitations outlined in the PMSS, but Ms.

LaFave nowhere states what objective "clinical findings" or "test results" she purported to be relying upon. R. 367. Nor did Ms. LaFave refer to or attach any treatment notes or other clinical evidence, although the PMSS form specifically instructed her to do so as appropriate. R. 364. Finally, Ms. LaFave's opinion is internally inconsistent to some extent: although she notes that Plaintiff's pain is largely controlled by medication, she also states that Plaintiff would need breaks approximately every 2 hours due to his pain and medication effects. R. 364, 365.

Ms. LaFave's conclusion also is in some conflict with other evidence in the record, thereby reducing the weight to be afforded to that opinion. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). For example, examining physician Geo-Phillips Chacko, M.D., examined Plaintiff on January 23, 2010, and noted that despite pain and decreased range of motion in the cervical and lumbar-sacral spine, Plaintiff had a negative straight leg raising in both sitting and supine positions. R. 308, 310. Dr. Chacko opined that Plaintiff was "able to perform both gross and fine tactile manipulation" with "strong and firm" grip strength. R. 310. Plaintiff had a safe and stable gait with no muscle atrophy. R. 310. Plaintiff's thoracic spine was nontender with full range of motion. R. 310.

Thus, because Ms. LaFave's opinion is unsupported by treatment notes or testing, conclusory, and inconsistent to some degree with other evidence in the record, consideration of this opinion does not require remand. The ALJ's decision reflects a thorough evaluation of the medical evidence before him, resulting in findings of specific

and significant limitations on Plaintiff's physical and mental functional abilities. R. 22-26. To the extent that Ms. LaFave's nonphysician opinion presents differing limitations, it is devoid of the specific findings and support that would entitle the opinion to weight. Therefore, the undersigned finds that the new evidence presented by Plaintiff to the Appeals Council does not upset the ALJ's disability determination and concludes that this claim of error should be rejected.

### C. *Opinion of Consultative Examining Physician Geo-Phillips Chacko, M.D.*

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's degenerative joint disease in his shoulders and to impose a reaching limitation on Plaintiff's RFC based thereon. Pl.'s Br. at 23-25; Pl.'s Reply Br. at 3-4. According to Plaintiff, the ALJ improperly rejected certain of Dr. Geo-Phillips Chacko's findings without explanation in determining Plaintiff's RFC, which undermines the ALJ's conclusion that Plaintiff can perform the job of bench assembler—a job that requires reaching "[f]requently." Pl.'s Br. at 23-25; *see* R. 27; *Dictionary of Occupational Titles* (4th rev. ed. 1991) 706.684.022, 1991 WL 679050 (Assembler, Small Products I / Bench Assembler).[3]

As outlined above, Dr. Chacko examined Plaintiff in a consultative capacity on January 23, 2010, and issued a written assessment, including a range of motion evaluation. R. 308-14. In his examination, Dr. Chacko noted that Plaintiff complained of neck and back pain, that his "right knee needs replaced," and of hearing and vision problems. R. 308. Dr. Chacko found that Plaintiff's left shoulder forward elevation was

---

[3] Plaintiff does not contend that the ALJ erred at step two in failing to find that the degenerative joint disease in his shoulders was a severe impairment. *See* Pl.'s Br. at 23-25; Pl.'s Reply Br. at 4.

120 degrees and Plaintiff's right shoulder forward elevation was 100 degrees. R. 310, 312 (reflecting that a full forward elevation is 150 degrees). Plaintiff argues that these limitations, combined with Dr. Chacko's finding that Plaintiff had a decreased range of motion in his cervical spine due to pain, limit Plaintiff's ability to reach overhead with either arm. Pl.'s Br. at 23; *see* R. 310. Dr. Chacko's opinion concludes with an assessment of "DJD of the shoulder, lumbar and cervical spine" but indicates that this assessment is based upon Plaintiff's reported history only. R. 310; *see* R. 24. Dr. Chacko did not specifically opine as to Plaintiff's reaching ability. *See* R. 308-14.

The ALJ thoroughly discussed Dr. Chacko's opinion, specifically noting the 120/100 shoulder forward elevation tests and the assessment of degenerative joint disease. R. 24. The ALJ also stated: "Claimant alleges limitation in the right shoulder; however, there is no mention in treating physician evidence of record of shoulder problem[.] [N]or does he allege it or mention it to consultative examiner as a symptom." R. 25. Plaintiff therefore cannot show that the ALJ rejected Dr. Chacko's assessment "without an explanation," as here the ALJ specifically referenced this consultative examining opinion and explained the rationale for his consideration of Plaintiff's right shoulder impairment. *See* Pl.'s Br. at 24; R. 25; *cf.* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (instructing that an ALJ may consider "only limitations and restrictions attributable to medically determinable impairments" in determining a claimant's RFC). The ALJ found Plaintiff's failure to have sought treatment for his alleged shoulder condition to be of consequence—an assessment that the Court is not at liberty to revisit. *See Foy*, 139 F. App'x at 43 ("[Claimant's] failure to avail herself of available

therapeutic treatment is a legitimate factor to be considered in evaluating the severity of her alleged mental limitations."); *Bowman*, 511 F.3d at 1272 (the reviewing court does not reweigh the evidence or substitute its own judgment).

Further, despite a partial reduction in shoulder elevation, Dr. Chacko found that Plaintiff had a full range of shoulder abduction, adduction, and both internal and external rotation. R. 312. The state agency medical consultants cited Dr. Chacko's findings, including the limited shoulder range of motion, but nevertheless found that Plaintiff did not have any manipulative limitations such as reaching or handling. R. 335, 337, 341, 350; *see also* R. 151, 166. Plaintiff himself testified that the degenerative joint changes he has experienced in his neck and shoulder restrict his ability to lift and to turn his head, but Plaintiff did not testify as to any resulting problems with reaching. *See* R. 44.

For all of these reasons, upon consideration of the entire record, there is substantial evidence to support the ALJ's RFC determination, including the lack of any reaching limitations based upon Plaintiff's shoulder condition. Reversal is not warranted on this basis.

## II. Whether the ALJ Erred in Assessing Plaintiff's Credibility

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about the symptom(s) and its functional effects." SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996). Plaintiff contends that the ALJ erred by discrediting Plaintiff based upon Plaintiff's failure to seek treatment for his mental health impairments and upon Plaintiff's testimony as to the alleged side effects of his medication. Pl.'s Br. at 26-28.

The ALJ is required to closely and affirmatively link his credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms," such as pain and other subjective symptoms, associated with his medically determinable impairments to substantial evidence in the record. *See Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); SSR 96-7p, 1996 WL 374186, at *1. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). The Tenth Circuit set forth in *Wilson* an illustrative list of factors that should be considered in assessing the credibility of subjective complaints (the "*Wilson* factors"), including:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation marks omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1589 (10th Cir. 1993); *see also* SSR 96-7p, 1996 WL 473186, at *3. "But so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (citation and internal quotation marks omitted).

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms"
were not credible to the extent they were inconsistent with the RFC assessment. R. 23.
The ALJ noted that Plaintiff did not attend a scheduled initial mental health consultation,
did not reschedule or return for such consultation, and was not currently receiving
psychiatric treatment. R. 23, 24, 25. The ALJ further stated that he "does not find
[Plaintiff] to be a particularly credible witness":

> Although he alleged disabling pain and limitation, treatment notes from
> claimant's primary care physician and consultative examiners fail to
> demonstrate that claimant's condition is as severe as alleged. Claimant
> alleges limitation in the right shoulder; however, there is no mention in
> treating physician evidence of record of shoulder problem[.] [N]or does he
> allege it or mention it to consultative examiner as a symptom. Claimant
> testified [at] the hearing that his medications cause side effects of
> sleepiness, drowsiness, and memory problems. However, on January 27,
> 2011 claimant reported excellent compliance with medication with no side
> effects. Consultative examiners noted no hearing or vision limitation, as
> claimant has alleged.
>
> The claimant has symptom-producing medical problems, but his
> testimony and other evidence do not credibly establish functional
> limitations to the extent alleged. The claimant's statements concerning his
> impairments and their impact on his ability to work are not entirely credible
> in light of discrepancies between the claimant's assertions and information
> contained in the documentary reports and the medical evidence. The
> claimant testified at the hearing that he has a valid driver's license and is
> able to drive. When asked at his prior hearing, the claimant testified that no
> treating or examining physician had placed any physical or mental work
> restrictions on his ability to work. The claimant said that he was unable to
> work due to right knee and back pain. Medical records show that the
> claimant has had right knee problems since he was 9 years of age. During a
> consultative examination, knee flexion was 100 degrees bilaterally.
> Further, he walked without the need of assistive devices, with a normal
> gait. The totality of the evidence, especially the objective and clinical
> findings of treating and consulting physicians, together with the claimant's
> range of activities, belie[s] the claimant's contention that he is totally
> disabled from all forms of gainful employment. Based on the entire record

including my observation of claimant at the hearing, the undersigned cannot find his allegations fully credible.

R. 25-26 (citation omitted).

Plaintiff first faults the ALJ's credibility determination to the extent that determination was based upon Plaintiff's failure to seek mental health treatment. Pl.'s Br. at 26-27. Citing *Thompson v. Sullivan*, Plaintiff argues that the ALJ erred in negatively appraising Plaintiff's credibility based upon Plaintiff's failure to receive mental health treatment without considering certain underlying factors. Pl.'s Br. at 26-27 (citing *Thompson*, 987 F.2d at 1490). In *Thompson*, the Tenth Circuit reversed a denial of benefits on multiple grounds, including a lack of substantial evidence undergirding the ALJ's determination that the claimant did not suffer from the significant nonexertional impairment of pain. *Thompson*, 987 F.2d at 1486, 1488-91 (citing *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987)). In reversing, the Tenth Circuit cited three separate errors in the method by which the ALJ determined the claimant's noncredibility. First, the ALJ did not sufficiently consider the *Wilson* credibility factors outlined above. *See id.* at 1490. Second, the ALJ failed to consider certain additional factors before "primarily" relying upon the claimant's failure to pursue medical treatment or take prescription medicine as support for his determination of noncredibility. *See id.* at 1489, 1490. These additional factors (the "*Frey* factors") were: "'(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.'" *See id.* at 1490 (quoting *Frey v Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).

And third, the ALJ relied on evidence of "minimal" daily activities performed by the claimant, which conflicted with the claimant's testimony, as support for reducing the claimant's credibility. *See id.* at 1489, 1490.

Here, in contrast to *Thompson*, the ALJ's credibility determination was expressly based upon a wide variety of subjective considerations as well as evaluation of the objective evidence in the record. *See* R. 23-26. The ALJ's credibility determination was not based "primarily" upon Plaintiff's failure to seek mental health treatment but upon the lack of "consistency or compatibility of nonmedical testimony with objective medical evidence," and, the ALJ expressly considered multiple others of the factors outlined in *Wilson*. *See* R. 24-25; *Wilson*, 602 F.3d at 1145 (internal quotation marks omitted).

Consideration of the *Frey* factors in the instant case would not render the ALJ's analysis infirm in any event. As recognized by the ALJ, mental health treatment was "recommended" but not prescribed for Plaintiff. R. 24, 25; *see* R. 243. The Tenth Circuit has indicated that the *Frey* factors would not apply to render a credibility determination insufficiently supported where there was no refusal to follow prescribed treatment at issue:

> Relying on our opinion in *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987), plaintiff also argues that the ALJ could not consider his failure to take pain medication in the absence of evidence that plaintiff had been prescribed pain medication and that it would have restored his ability to work if he had taken it. Plaintiff's reliance on our opinion in *Frey* is misplaced, because *Frey* concerned the circumstances under which an ALJ may deny benefits because a claimant has refused to follow prescribed treatment. The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain—including whether he took pain

> medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling.

*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (citation omitted).  *But cf. Thompson*, 987 F.2d at 1490 (holding that finding of no significant nonexertional limitation is not sufficiently supported where, *inter alia*, the ALJ did not adequately consider the *Frey* factors with respect to pursuing medical treatment or taking prescription medicine).  In addition, the ALJ cited not only Plaintiff's failure to pursue ongoing mental health treatment but also Plaintiff's failure to either show up or reschedule a specific mental health assessment appointment that had been scheduled in December 2009.  R. 23; *see* R. 237-39.  Plaintiff testified that he is unable, for unspecified reasons, to make the 17-mile trip to counseling treatment "every day or every week," but Plaintiff offered no explanation at the hearing for failing to show up for or reschedule his December 2009 appointment.  R. 48-49.  Further, Plaintiff's testimony as to why he could not attend regular appointments at the clinic 17 miles away was vague and did not amount to a "justifiable excuse."  R. 48-49 (Plaintiff testifying "I'm unable to make the trips back and forth"); *see also* R. 36 (Plaintiff testifying that he has a driver's license and drives occasionally).  Although Plaintiff argues on appeal that indigence is a valid reason for failing to seek treatment, Pl.'s Br. at 27, at the hearing Plaintiff did not dispute the ALJ's statement that the relevant mental health clinic was "free" to use.  R. 48; *see also Qualls*, 206 F.3d at 1372-73 (upholding credibility determination based in part upon claimant's failure to seek medical treatment where claimant did not dispute ALJ's finding that free medical care was available).

Further, a reasonable reading of *Thompson* reflects that the ALJ's analysis of the four factors listed therein is not an absolute prerequisite to the credibility determination every time a claimant's failure to pursue treatment bears upon that determination to any extent. *See Thompson*, 987 F.2d at 1490 (noting that factors "should" be considered); *Qualls*, 206 F.3d at 1372-73 (upholding ALJ's use of claimant's failure to take pain medication in evaluating claimant's credibility on pain issue and rejecting insufficiency argument based upon application of *Frey* factors). This view is supported by the multiple authorities instructing that ALJs may consider a claimant's medication, treatment, and attempts to seek relief as part of the credibility assessment, with no mention or requirement of the *Frey* factors. *See, e.g.*, *Wilson*, 602 F.3d at 1146 (upholding adverse credibility determination as supported by substantial evidence where ALJ considered, *inter alia*, the evidence that claimant did not take prescription-strength pain relief medication, with no mention of the *Frey* factors); *Qualls*, 206 F.3d at 1373 (indicating that *Frey* factors are inapplicable unless ALJ purports to deny benefits on the ground that claimant failed to follow prescribed treatment); 20 C.F.R. § 416.929(c)(3)(iv)-(v) (prescribing that ALJs will consider factors including medication and nonmedication treatment in evaluating symptoms such as pain).

Finally, Plaintiff's lack of mental treatment was only one of various facts and observations included in the ALJ's thorough evaluation of "the extensiveness of the attempts (medical or nonmedical) to obtain relief" and "the frequency of medical contacts," as well as other *Wilson* factors proper for use in assessing Plaintiff's credibility. *See* R. 23-26; *Wilson*, 602 F.3d at 1145 (internal quotation marks omitted).

Thus, in contrast to the facts in *Thompson*, where little was "left as 'substantial evidence' for the ALJ's determination of noncredibility," the ALJ's finding that Plaintiff failed to pursue mental health treatment treatment—even assuming such finding was not properly reached—does not undermine the ALJ's otherwise-supported credibility assessment. *See Thompson*, 987 F.2d at 1490.

Plaintiff also argues that the ALJ should not have dismissed the impact that the side effects of Plaintiff's medication would have on Plaintiff's ability to sustain concentration. Pl.'s Br. at 26, 27-28. In the decision, the ALJ cited a medical record from January 27, 2011, in which Plaintiff reported no medication side effects, but the ALJ also cited Plaintiff's testimony to the effect that his medications cause sleepiness, drowsiness, and memory problems. R. 25; *see* R. 46-48, 354. The ALJ therefore properly "set[] forth the specific evidence he relie[d] on in evaluating the claimant's credibility" and did not need to "make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (internal quotation marks omitted). Plaintiff's credibility was for the ALJ to evaluate, and the ALJ was permitted to assess Plaintiff's contrasting accounts regarding the side effects of his medication. The fact that Plaintiff testified as to some side effects does not render the ALJ's credibility determination unsupported by substantial evidence. *See Wilson*, 602 F.3d at 1146 (upholding credibility determination where ALJ took into account discrepancies and misrepresentations as to claimant's substance abuse in considering "overall credibility").

Viewed in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to

substantial evidence." *See id.* at 1144-45. Plaintiff does not allege that the ALJ mischaracterized any of the above evidence, and the decision clearly demonstrates that ALJ considered the requisite factors in assessing Plaintiff's credibility—e.g., "daily activities"; treatment received; and "location, duration, frequency, and intensity of the individual's pain or other symptoms." *See* R. 23-26; *Wilson*, 602 F.3d at 1145; SSR 96-7p, 1996 WL 374186, at *3. The Court should not engage in an impermissible reweighing of the evidence or substitute its judgment for that of the Commissioner. *Qualls*, 206 F.3d at 1371.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72(c). Any such objections must be filed with the Clerk of this Court by November 14, 2014. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED on this 31st day of October, 2014.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE